Montgomery, McCracken, Walker & Rhoads, LLP
437 Madison Avenue, 24th Floor
New York, NY 10022

*Attorneys for Plaintiff*
STONELINE GROUP LLC.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

STONELINE GROUP, LLC.                              Civ. Action No. 23-cv-8115 (MKV)

                                    Plaintiff,

                                                     FIRST AMENDED COMPLAINT
-against-                                            FOR BREACH OF CONTRACT AND
                                                     DECLARATORY JUDGMENT

LIBERTY MUTUAL INSURANCE COMPANY,
                                    Defendant.       **Jury Trial Demanded**
-------------------------------------------------------------X


Plaintiff, STONELINE GROUP, LLC, by their attorneys, Montgomery, McCracken, Walker & Rhoads, LLP, hereby files this First Amended Complaint against LIBERTY MUTUAL INSURANCE COMPANY, its subsidiaries and affiliates, upon information and belief, allege as follows:

## PARTIES

1.     At all material times Plaintiff, STONELINE GROUP, LLC, ("Stoneline" or "Plaintiff") was and still is a corporation or other business entity organized and existing under and by virtue of the laws of the State of Florida, licensed to do business in the State of Florida and with a principal place of business at 3540 NW 72nd Ave, Miami, FL 33122.

2.      Upon information and belief, at all material times, Defendant, LIBERTY MUTUAL INSURANCE COMPANY, ("Liberty" or "Defendant") is a company organized under the laws of the State of Massachusetts and maintains a principal place of business at 175 Berkeley Street

Boston, Massachusetts 02116. Liberty also conducts business in the state of New York from its offices located at 55 Water Street, 23rd floor New York, NY 10041 and is a company engaged, amongst other things, in providing marine cargo insurance.

**<u>SUBJECT MATTER, JURISDICTION, VENUE AND APPLICABLE LAW</u>**

3.      This First Amended Complaint is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. The duties and responsibilities of the parties are governed by U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 30701, formerly 46 U.S.C. § 1300, et seq.

4.      This Honorable Court has jurisdiction over this matter because of the diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 as provided by 28 USC §1332.

5.      Furthermore, venue is proper before this Honorable Court pursuant to Clause 68 of the applicable Marine Cargo Policy which provides that:

> *"It is hereby agreed that any legal suit, action or proceeding arising out of or in connection with this policy shall be instituted in the United States District Court located in the City County and State of New York, or, if that court shall lack subject matter jurisdiction, a Court of the State of New York located in the City County and State of New York. The Insured and The Company irrevocable and unconditionally submit to the exclusive jurisdiction of such court and waive any objection to such venue, and agree not to plead or claim in any suit, action or proceeding so instituted that such court is an inconvenient forum."*
> (Exhibit A *infra*)

6.      Additionally, Clause 69 of the of the applicable Marine Cargo Policy provides that:

> *"It is agreed that the rights and obligations of The Company and The Insured hereunder shall be governed by the federal maritime common law of the United States or, in the absence of controlling federal maritime common law of the United States, the law of the state of New York, irrespective of any principles of choice of law."*
> (Exhibit A *infra*)

## FACTUAL BACKGROUND & CLAIMS FOR RELIEF

### a) *The Marine Cargo Policy*

7.      On or about the middle of August of 2022, Stoneline through its broker, non-party All Risk, Ltd., d.b.a. RT Specialty LLC of Sunrise, Florida, purchased from Liberty an all-risk marine policy, policy number OMCGC12072401 ("Policy").  A true and correct copy of the Policy is attached hereby as Exhibit A.

8.      Section 2 of the Marine Cargo Policy Declaration ("Declarations") provided a Policy effective date of August 15, 2022 12:01 AM Standard Time and an expiration date of August 15, 2023 12:01 AM Standard Time.  A true and correct copy of the Declarations is attached hereby as Exhibit B.

9.      Section 4 of the Declarations identified the coverage purchased by Stoneline from Liberty as including both "Ocean Cargo including War Risk" and "Warehouse Storage".

### b) *The Shipment*

10.      During the summer of 2022, Stoneline purchased 4,183 crates of tumbled beige marble stone ("Cargo") for $1,806,281.33, exclusive of shipping and insurance costs from Yaman Maden Sa. Ve TIC A.S. ("Yaman").

11.      On or about August 15, 2022, the Cargo was fully loaded aboard the vessel *M/V Canny Caroline* at the port of Aliaga, Turkey. The vessel was able to observe the packaging of the cargo and accepted the shipment as proper for carriage.

12.      Stoneline's Cargo was stowed aboard of the *M/V Canny Caroline* as follows: 3485 crates were stowed in hold 2, and an additional 698 crates were stowed in hold number 4. Furthermore 1700 crates of cargo belonging to other parties were also stowed in hold number 4.

13.    On the same day, August 15, 2022, the Liberty's all risk policy OMCGC12D72401 attached to the shipment.

14.    On or about August 16, 2022, the vessel operator issued a "clean" bill of lading number VRMD2201P008 for all of the cargo stowed on the *M/V Canny Caroline* ("Bill of Lading"). A true and correct copy of the Bill of Lading is attached hereby as Exhibit C.

15.    The Bill of Lading states on its face that the cargo was received "in apparent good order and condition". As the cargo was in open crates, the condition of the cargo inside the crates could be observed by the crew of the *M/V Canny Caroline*.

16.    Non-party EKiN Fumigation and Disinfection Port Services ("EKiN") issued a Certificate(s) of fumigation certifying that the Cargo was fully fumigated on the *M/V Canny Caroline* between August 19, 2022 and August 21, 2022. A true and correct copy of the Certificate of Fumigation is attached hereby as Exhibit D.

17.    The Certificate(s) of Fumigation states on its face the EKiN certified that the shipment had been "*inspected during its loading by our fumigation operator and was found free from harmful matters residues, khapra beetle trogoderma granarium, Everest pest and other insects pests and that was duly fumigated by our association*".

18.    On or about August 27, 2022 the *M/V Canny Caroline* sailed from the port of Aliaga, Turkey.

19.    Between 05:00 AM on September 28, 2022 and 09:00 AM on September 29, the *M/V Canny Caroline* was caught on the path of Hurricane Ian which generated "heavy weather with very rough seas" as well as "high swell, dangerous waves and wind gales" which caused the Vessel to roll and pitch heavily. A true and correct copy of the Sea Protest letter issued by the Master of the *M/V Canny Caroline* on September 29, 2022 is attached hereby as Exhibit E.

20.     The Master of the M/V Canny Caroline stated that, due to the bad weather encountered, he feared damages to the cargo. *See* Exhibit E.

21.     On or about October 6, 2023, the *M/V Canny Caroline* arrived at berth at the port of Port Everglades, Florida.

22.     Upon commencing discharge operations on or about October 6, 2022, cargo was observed to be in damaged conditions inside several cargo holds including, but not limited to, cargo holds #2 and #4. A true and correct copy of the Statement of Facts for the *M/V Canny Caroline* from September 27, 2023 to October 30, 2022 is attached hereby as Exhibit F. True and correct copies of pictures of the cargo taken onboard the M/V Canny Caroline at the time of discharge are attached here as Exhibit G.

23.     The stevedores that handled the discharge of the cargo in Port Everglades reported that Hold No. 2, which contained only the Stoneline Cargo, had poor dunnage to support the cargo.

24.     Additional crates or cargo stowed in cargo holds Nos. 2 and 4, both of which contained the Cargo insured by Stoneline, were damaged before or during the discharge operations. True and correct copies of the Letters of Protest issued by the Master of the *M/V Canny Caroline* between October 7 and October 13, 2022 are attached hereby as Exhibit H.

25.     Once the discharge had been completed, it was discovered that approximately 1,300 crates of marble had suffered physical damage during the transportation and their content was severely damaged or destroyed.

26.     On or about October 12, 2022, shortly after being discharged from the *M/V Canny Caroline*, the Cargo was inspected by the United States Department of Agriculture ("USDA").

27.     On October 13, 2022, the USDA issued an Emergency Action Notification No. 431603 ("EAN") and ordered that the entire shipment under Bill of Lading VRMD2201P008 be either "re-

exported or destroyed" because of the presence of "live pests" on the Cargo. A true and correct copy of the EAN is attached hereby as Exhibit I.

28.     Pursuant to the USDA EAN, Stoneline was required to reload the Cargo on the *M/V Canny Caroline*, and have it transported to the Dominican Republic, whose government was willing to accept the contaminated cargo for discharge. The cargo was neither seized nor detained by USDA.

29.     On or about October 26, 2022, the local stevedore began to reload the Cargo onto the *M/V Canny Caroline* for transportation to Santo Domingo. *See* Exhibit F.

30.     Stoneline incurred substantial expenses to reload the cargo onboard the *M/V Canny Caroline*.

31.     During the reloading operations, a great number of crates were damaged by the stevedores.

32.      The Master of the *M/V Canny Caroline* observed the reloading operations by the stevedores in Port Everglades and reported in several Letters of Protest that the cases and the Cargo contained in the cases that were being loaded in holds Nos. 1, 2, 3, and 4 had suffered heavy damage due to mishandling by the stevedores. True and correct copies of the Letters of Protest issued by the Master of the *M/V Canny Caroline* between October 19 and October 29, 2022 are attached hereby as Exhibit J.

33.     On or about October 30, 2022, Bill of Lading VRMD2201P008A was issued to carry 4028 crates of the original 4183 crates of the Cargo from Florida to the Dominican Republic. ("Second Bill of Lading"). A true and correct copy of the Second Bill of Lading is attached hereby as Exhibit K. 155 of the crates that had been previously damaged were disposed of.

34.     The Second Bill of Lading lists 4028 pallets of tumbled beige marble and contains the additional remark by the Master that during the loading operations, many units of cargo were damaged due to negligence of the Port Everglades' stevedores. *See* Exhibit K.

35.    On or about November 10, 2022, the *M/V Canny Caroline* reached the port of Santo Domingo, Dominican Republic.

36.    Stoneline incurred substantial expenses to transport the Cargo from Port Everglades to Santo Domingo.

37.    Upon discharging the Cargo in Santo Domingo, it was discovered that approximately 2,000 crates of Cargo had been damaged in addition to the approximately 1,300 ones that had been previously found damaged in Port Everglades.

38.    Stoneline incurred substantial expenses to discharge and store the Cargo in Santo Domingo.

39.    Stoneline is now in the process of reconditioning what is left of the sound Cargo in Santo Domingo and shipping it back to the US. At least ten containers of Cargo have been shipped back at this time but cannot be sold because of their damage in spite of efforts by the Plaintiff of mitigate its damages. Stoneline incurred losses due to the costs of reconditioning of the Cargo and the additional ocean freight.

40.    As a result of: the facts listed above, Stoneline suffered losses that can now be estimated of at least $**6,164,605.03**.

   c)    ***Procedural History - Stoneline Insurance Claim and Liberty's Wrongful Denial of Coverage***

41.    On or about October 18, 2022 Stoneline, consistent with the Liberty's Marine Cargo Claim Guidelines, issued to Liberty, a first "Claim Notification Form" under the Policy for a loss dated October 18, 2022. ("First Claim"). A true and correct copy of the First Claim is attached hereby as Exhibit L.

42.    The basis of Stoneline's First Claim to Liberty was for "Damaged Materials" to 1,300 crates. *See* Exhibit L.

43.     On or about October 18, 2022, Stoneline, again consistent with Liberty's Marine Cargo Claim Guidelines, issued to Liberty a second "Claim Notification Form" under the Policy for a loss also dated October 18, 2022. ("Second Claim"). A true and correct copy of the Second Claim is attached hereby as Exhibit M.

44.     The basis of Stoneline Second Claim to Liberty is due to "Pest found in this shipment. Re-Export or destroy" and it affected 4,183 crates which was the entire amount of the Cargo insured by Stoneline.

45.     On November 1, 2022, Liberty sent to Stoneline a Declination Of Coverage / Reservation Of Rights letter related to Stoneline's First Claim. ("Declination Letter"). A true and correct copy of the Declination Letter is attached hereby as Exhibit N.

46.     The Declination Letter addressed two separate allegations by Stoneline: one that 30% of the crates of Cargo had suffered damages upon arrival, and the other that the entirety of the cargo suffered damages due to rejection from entry into the United States as a result of live pest being found in the Cargo. The rejection of the cargo from entry prevented Plaintiff from covering its anticipated sales of the stone to customers.

47.     The Declination Letter also alleged that the policy had not attached to the shipment because the voyage of the crates started at a warehouse on a date prior to effective date of the policy.

48.     The Policy, however, is clearly a "time policy" which starts on a specific date, and ends on a specific date, regardless of when a voyage begins or ends as provided in the Declarations. (Exhibit B). *See Archer-Daniels-Midland Co. v. Phoenix Assur. Co. of New York*, 975 F.Supp. 1137 (S.D.Ill. 1997). Defendant wrongfully declined coverage based upon an argument that the Policy did not attach to the shipment.

49.     The fact the Cargo might have left a warehouse in Turkey prior to the effective date of the Policy of August 15, 2022, is irrelevant because the cargo was acknowledged to be in good order and condition and free of pest by the ocean carrier by means of acceptance of the cargo aboard the vessel; issuance of a clean bill of lading on August 16, 2022; and by the issuance of a certificate of fumigation at the port of loading.

50.     On or about November 11, 2022, Stoneline, again consistent with Liberty's Marine Cargo Claim Guidelines, issued to Liberty a third "Claim Notification Form" under the Policy for a loss dated November 11, 2022. ("Third Claim"). A true and correct copy of the Third Claim is attached hereby as Exhibit O.

51.     The basis of Stoneline Third Claim to Liberty is for "Damaged Material" affecting 2,000 crates.

52.     Liberty never issued a declination letter to Stoneline relative to the Third Claim.

53.     On December 2, 2022, less than 2 weeks after the Third Claim was sent to Liberty, and less than two months after the First Claim, Liberty mailed a Notice of Cancellation of Insurance to Stoneline ("Notice of Cancellation"), unilaterally cancelling the Policy as of December 28, 2022 at 12:01 AM standard time at the place of the insured due to alleged "Claim's Activity". (A true and correct copy of the Notice of Cancellation is attached hereby as Exhibit P).

54.     The Policy expressly provides that cancellation "shall not affect any risk on which this insurance has attached prior to the effective date of such notice of cancellation". *See* Exhibit A § 4.

55.     The only Cargo that Stoneline transported during the period that the Policy was effective was the same marble Cargo that was transported from Turkey to Port Everglades, and from Port

Everglades to Santo Domingo, Dominican Republic under the First and the Second Bill of Lading, which is the cargo that is the subject of this litigation.

56.     No claims were ever paid by Liberty to Stoneline under the Policy.

57.     No refund of premium was ever offered by Liberty to Stoneline.

## THE CLAIM

58.     The Cargo of marble was within the categories of "Goods Insured" identified by Clause 5 of the Policy and Section 3 of the Declarations. *See* Exhibits A and B.

59.     The Policy covered "all shipments made by […] by iron or steel steamer or steamers, and/or iron or steel motorship or motorships" which included the shipment of Cargo loaded onboard the M/V Canny Caroline from Turkey to Port Everglades and from Port Everglades to Santo Domingo. *See* Exhibit A, § 8.

60.     The Policy covered "[a]gainst all risks of physical loss or damage from any external cause irrespective of percentage" which includes: the physical damages to the Cargo that occurred (a) onboard the *M/V Canny Caroline* between Turkey and Port Everglades; (b) during discharging in Port Everglades; (c) due to the infestation by the pest; (e) during reloading on the *M/V Canny Caroline* in Port Everglades; (f) during the voyage between Port Everglades and Santo Domingo, and (g) during discharge in Santo Domingo. *See* Exhibit A, §§ 8 and 12, See Exhibit B, § 6.

61.     The Policy covered all expenses and damages incurred by Stoneline in storing, reloading, and discharging the cargo in Port Everglades and Santo Domingo, including the overtime accrued by the stevedores, pursuant to Clause 25 of the Policy. *See* Exhibit A, § 25.

62.     The Policy provides at Clause 42 "Duty, Taxes, And Freight Payable" for the following coverage:

*This insurance is also extended to cover, subject to the policy terms of average, the risk of loss by reason of perils insured on duty, taxes and/or freight payable imposed on goods at port or place of final destination and insured hereunder. It being understood and agreed, however, that when the risk upon the goods continue beyond the time of landing from the conveyance, the increased value, consequent upon the payment of such duty, taxes, and/or freight payable shall attach as an additional insurance upon the goods from the time such duty, taxes, and/or freight payable are paid or become due, to the extent of the amounts thereof actually paid or payable.* See Exhibit A.

63.     The damages to the Cargo pursuant to the EAN issued by the USDA is covered by the

policy in Clause 50 "Custom Damage" providing that:

*This policy is extended to cover physical loss or damage caused by the actions of government agents in the course of their inspection duties.* See Exhibit A.

64.     The insurance claim that Stoneline presented to Liberty and that Liberty declined, totals

**$6,164,605.03**, as best as can be estimated at this time according to the summary breakdown

below.

| Expenses | Amount |
| --- | --- |
| Finelog Lojistik - Loading and Local Expenses in Turkey-1 | $ 89,595.50 |
| Finelog Lojistik - Loading and Local Expenses in Turkey-2 | $ 358,382.00 |
| Material cost from Yaman Maden | $ 1,344,350.30 |
| Material cost from Yaman Maden | $ 461,931.03 |
| Ocean Freight Costs | $ 992,662.93 |
| Discharging cost from Hirsch Stevedoring | $ 196,320.93 |
| Additional Expenses from Hirsch Stevedoring | $ 210,000.00 |
| Demurrage Fees | $ 143,000.00 |
| Ocean Freight Costs to Dominican Republic – Varamar | $842,000.00 |
| Unloading and Port Fees – Dominican Republic – Rannik | $446,792.84 |

| 50 Containers of Material Damaged | $475,000.00 |
|---|---|
| Ocean Freight Costs - Routemood | $335,794.00 |
| Dominican Republic – J18 Logistics | $268,775.50 |
| **Total** | **$ 6,164,605.03** |

65.    As set forth in the summary above, the claim includes the cost of the stevedores loading the cargo aboard the *M/V Canny Caroline* in Turkey, as well as local port expenses in Turkey totaling $447,977.50.

66.    The purchase price for the Cargo purchased from Yaman totaled $1,806,281.33.

67.    This expense is covered under Clause 55 of the Policy F.O.B., F.A.S., and C&F Shipments providing:

> *This insurance is extended, subject to its terms and conditions, to cover The Insured's interest in goods and/or merchandise sold by The Insured on F.O.B., F.A.S., Cost and Freight or similar terms whereby The Insured is not obligated to furnish marine insurance and continues until the goods and/or merchandise are loaded on board the overseas vessel or until The Insured's interest ceases, whichever shall first occur.*

68.    The ocean carrier charged Stoneline freight to transport the Cargo from Turkey to Port Everglades in the amount of $992,662.93.

69.    The cost of hiring the stevedores in Port Everglades to discharge the Cargo at that port was $196,320.93.

70.     Stoneline also incurred demurrage fees that had to be paid to the ocean carrier due to delay in loading of the Cargo. That amounted to $143,000. The Policy also provides coverage for those expenses at Clause 52 "Demurrage":

> *Demurrage charges and/or late penalties assessed against and paid by The Insured for late return of containers when said containers are retained by The Insured at*

*the instruction of The Company for inspection by The Company's surveyor in investigation of loss or damage recoverable under this policy.*
*The time period for which The Company shall be liable for said charges and/or penalties shall begin at the time The Company instructs The Insured to retain the containers for inspection and end at the time The Company's surveyor instructs The Insured to return the containers.*

71.    Stoneline also incurred the cost of storing the Cargo on the Port Everglades terminal and then having to reload the Cargo on the *M/V Canny Caroline*. This cost amounted to $210,000.00. The cost is covered by the policy which provides at clause 51 "Customs Storage" that:

*It is understood and agreed that should the transit of the goods to insured destination be interrupted by their temporary storage in a customs warehouse at port of entry, this insurance is automatically extended to cover the property insured (subject to policy terms and conditions) during such interruption while in bonded or other customs warehouses without reference to the possible coexistence of fire and other insurance effected by others at destination to cover the goods in question. In consideration of the foregoing The Insured agrees to declare shipments held covered by this endorsement and pay premium thereon, if required, at rates to be agreed.*

72.    As noted earlier, Stoneline was required to re-export the Cargo to the Dominican Republic to avoid the USDA's alternative order for destruction of the Cargo. The cost of shipping the Cargo to the Dominican Republic, storing the Cargo there, reloading the Cargo to re-export the Cargo back to the US amounted to approximately $2,107,362.34. Those expenses are covered by clause 55 in of the Policy "Extra Expense":

*Where by reason of a peril insured against under this policy, extra expenses are necessarily incurred to destroy, dump or otherwise dispose of the damaged goods, or where extra expenses are necessarily incurred in discharging from the vessel and/or craft and/or conveyance, such expenses will be recoverable in addition to the damage to the insured interest. Nothing contained herein shall be construed to cover any clean up expenses for which the Insured shall be liable under any pollution statute. The Company shall not be liable under this clause for more than **10%** of the insured value of the shipment.*

### **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

73.    Plaintiff repeats and re-alleges paragraphs 3 to 72 as if set forth at length.

74.     As set forth in paragraphs 40 and 60 above, Plaintiff has thus far suffered damages in the approximate amount of $**6,164,605.03** for the shipment performed under the Policy.

75.     Although duly demanded, Liberty has made no payments.

76.     In refusing to reimburse Plaintiff for its damages, Liberty has failed to fulfill its obligations under the contract of insurance and is therefore in breach.

### SECOND CAUSE OF ACTION – DECLARATORY RELIEF

77.     Plaintiff repeats and re-alleges paragraphs 3 to 76 as if set forth here at length.

78.     This count is brought pursuant to 28 U.S.C. §2201 and FRCP Rule 57.  There exists an actual and controversy between the parties by virtue of Liberty's refusal to acknowledge liability under the Policy for Plaintiff' damages related to the Cargo.  A declaration of Plaintiff's rights will terminate the dispute between the parties.

WHEREFORE, Plaintiff demands:

Judgment against Defendant for damages together with interest and costs; its attorney costs and fees incurred in this proceeding; and a Declaration by the Honorable Court that Defendant is entitled to Judgment against Defendant for its damages under the applicable policy, such for such other and further relief as may be appropriate.

Dated:          New York, New York
                October 23, 2023

                                    Respectfully submitted,

                                    Montgomery McCracken Walker & Rhoads LLP
                                    *Attorneys for Plaintiff*

                          By:     /s/Matteo Bonuzzi
                                  Matteo Bonuzzi
                                  Wook Chung
                                  Vincent M. DeOrchis
                                  Kaspar Kielland


                                  437 Madison Avenue, 24th Floor
                                  New York, NY   10022
                                  Office: (212) 867-9500
                                  Direct: (212) 551-7730